This is a matter in which trial counsel's actual conflict of interest adversely affected his representation of Mr. Redillo in his state court trial. Unfortunately, the California Court of Appeal did not find an actual conflict of interest, although I can't see how they could avoid making that finding. California did get the right federal rule, didn't they? They cited to the Supreme Court rule and Is the question here then whether they applied it correctly? That's correct. Yes. They did cite to the correct federal standard. They then turned around and said there was a potential conflict and concluded that the petitioner had not shown an adverse effect. But that was in his direct appeal. He then files a petition for habeas corpus in the state courts. And in that petition, which is some 30 pages long, he specifically addresses all of the factual issues that were raised before the district court. That those issues are summarily denied by the Court of Appeals. There's no recent decision with respect to the issues he raises in his habeas petition. There's a summary denial by the Cal Supreme Court, although Judge Kennard was of the opinion that the petition should be granted. We then get to the district court. We expand the record substantially. The district court did find that there was an actual conflict of interest, but again found no adverse effect. I think this Court's decisions in Lockhart v. Tahoon and Sanders v. Rattal demonstrate that what Petitioner did show, both before the state courts and then again before the federal courts, meets the standard of adverse effect. It's impossible, as this Court said in Lockhart, for Petitioner to absolutely prove what trial counsel did or didn't do because of his conflict. Remember, we have trial counsel retained by two individuals who are charged with exactly the same crime being prosecuted by the state separately. The state could have joined those cases, but they chose not to, and that was some issue before the federal courts. Counsel, let me just interrupt you for a second. Are you implying that you don't have to show some adverse effect from the alleged adverse effect? No, no. What are those adverse effects? The adverse effect is that he had substantial impeachment material with respect to all three eyewitnesses who testified against Mr. Rodilio in the state court trial, Sturdivant, Rainey, and Landeros. He had substantial impeachment material that he did not use in his cross-examination. He starts in his opening and says, I'm going to prove to you, the jury, that Cortez was the shooter in this case, not my client, Mr. Rodilio. He then proceeds throughout the course of the trial not to do that. He does not use the fact that ---- But, Counsel, couldn't that just have been trial tactics? I mean, you're a fine lawyer, I'm sure. You make some decisions in the heat of battle. You decide which way to go. And in this case, I mean, for example, in connection with the physical stature, I've noted here that Fletcher raised the issue of the shooter's stature during his examination of Sturdivant. The fact that he didn't elicit more detailed testimony was a product of Sturdivant's refusal to cooperate. Fletcher didn't ask Rainey about the possibility that the heavyset suspect was the shooter because Rainey stated that she did not see the shooter well and was unable to identify the person in the lineup. And various other evidence established that Cortez was heavyset was also presented to the jury. So I just pull that out of the totality to indicate that, at least in my review of the record, I'm struggling with where is the adverse consequence? What did he do wrong or she do wrong that, in fact, prejudiced your client? He makes no substantial effort to identify this heavyset Hispanic person as Mr. Cortez. Mr. Cortez is identified in photo spreads by two of the three witnesses pretrial as the heavyset person seen at the scene. When he cross-examines those witnesses, he makes no attempt to get them to identify Cortez as that person. Let's take that for a moment. Whose burden is it to show that that failure, as you describe it, was prejudicial to your client? Do we just have to rely on supposition or do you have a burden to show that something directly flows from that? Well, the only thing that Petitioner has to show is some potential adverse effect. Potential adverse effect? Adverse effect. Well, that's to establish that there was an adverse relationship. But don't you have to show something beyond that in terms of actually getting relief here? No. He does not have to show a prejudice as he would in Strickland. The standard under actual conflict is not the Strickland prejudice standard. Even though the state court did not find the conflict that you're talking about? And that's the problem. The state court applies the wrong standard. It applies even a greater prejudice standard. It said that the problem that Petitioner had on direct appeal was that he did not show that his trial counsel failed to present evidence that could have exonerated him, that could have resulted in a better outcome. That's simply not the standard. That's not the Supreme Court standard. This Court, in interpreting that standard, has never said that there's a prejudice standard. It's simply an adverse effect standard. But can we get back to where we left off a moment ago? You said that he didn't show, he made no substantial effort to identify Cortez. Right. Doesn't substantial effort suggest that you're asking us to evaluate the tactics of trial? If trial counsel could turn around and say, I adopted this other strategy in this trial, this was my defense of Rodilio, it really didn't affect, it didn't have a lot to do with Cortez, that would be a proper inquiry. But at the evidentiary hearing, he said it was absolutely essential for him to identify for the jury that Cortez was the heavyset Hispanic who had been identified at the scene. He simply didn't do that at all during the trial. He gets to his final argument. He doesn't mention Cortez. He says in his opening, I'm going to prove Cortez was the shooter. He gets to his final argument. He never says Cortez was the shooter. Are we to imply from that some form of cianter because of his adverse representation? Yes, and particularly because he then turns around two weeks later and uses the information that he developed during the Rodilio trial to get the district attorney's office to offer a four-year deal to Cortez after Mr. Rodilio had been sentenced to 32 years on exactly the same charges. Well, we'll look forward to receiving your outstanding rebuttal argument in just a minute. But we're going to reserve two minutes for you, and we'll now hear from Mr. Mercer from the government. Thank you. Good morning, and may it please the Court. Deputy Attorney General Stephen Mercer on behalf of Respondent. Petitioner's claim of adverse impact consists of a litany of factual assertions that Respondent submits has no business being raised in this forum for at least three simple reasons. Number one, they were all resolved against him following the evidentiator hearing. Number two, Mr. Brennan did not see fit to file objections to those findings to the district court, and, therefore, any challenge to those factual findings have been waived before this court and this court's own law. And number three, and this really gets to the heart of the argument, is that a simple side-by-side comparison between Petitioner's factual assertions and the trial record in this case shows that those assertions are flat-out wrong. For example, Petitioner has argued in his reply brief and again before this court this morning that, quote, during his final statement to the jury, Fletcher never argued to the jury that Cortez was in fact a shooter. That is simply not true. At the reporter's transcript beginning at page 2434 through 2436, Fletcher argued that Cortez had in fact been identified by eyewitness Lenderos who identified, quote, Jesus Cortez as, quote, the person who got out of the truck and shot. Now, that can be found at the excerpts of record at page 323. The district court adopted that. The district court noted that in its findings. There's been no objection to that finding by the district court. And it's just simply misplaced to try and relitigate that here. Number two. Go ahead. Go ahead. Oh, okay. We've also heard argument that Fletcher never presented the photo spread identification of evidence to Cortez to the jury, again, at oral argument this morning and in the reply brief at page three. Again, simply not true. At RT, page 1529, and for the next 12 pages, that photo spread evidence was used as the basis for Detective Aguirre's direct examination testimony. It was introduced into evidence, which Fletcher then attacked during cross-examination. The co-counsel's attorney, Daniel Husswood, also cross-examined Detective Aguirre about that very photo spread evidence and identified, quote, number two was Jesus Cortez, right? That's at page 1552 of the reporter's transcripts. And the district court, in their report, at excerpts of record, page 322, therefore found that Petitioner's argument is, quote, without merit and belied by the record. Again, as this court noted a few minutes ago, Petitioner's allegation that Fletcher never attempted to have Cortez's physical stature made known to the jury. Again, and with respect, simply not true. In direct examination, at page 1535 of the reporter's transcript, Detective Aguirre was asked to describe Cortez's build as heavyset. Again, the district court noted that and put that in their factual findings at excerpts of record, page 322. The same physical description came in through the examination of Sturdivant and Landeros. Excuse me. Refuting Petitioner's allegation that Fletcher never attempted to impeach those eyewitnesses with their prior statements. He examined both of those witnesses during cross-examination about their prior identifications of Cortez as the shooter. The problem, Mr. Mercer, it's unusual, would you say, in this case, that both were represented by the same lawyer. It is unusual. And the result, the other side would say, when we look at the difference in the penalties, both accused of the same activity, the difference in the penalty is substantial. There's no doubt that the difference in the penalty was substantial. I would point out to this court, although I think this is really a side issue, the prosecution argued at trial when this issue was raised that the culpability was vastly different. There was no evidence that Cortez ever shot, actually shot the gun. What I was going to do is ask you a question, assuming those things. And I was giving you the premises. So what is the issue before us today as we review? Assuming those things are factually true, then what is before this court in your view? Well, the real sole issue is whether the California Court of Appeals' rejection of this claim and their reasoned opinion was contrary to or an unreasonable application of United States Supreme Court holdings. As this court has observed, they did, in fact, cite the correct United States Supreme Court statements. The Cuellar case and the Berger case correctly cited the adverse impact standard. They went on to fully analyze the trial transcripts, both under that standard and the lower state standard. And then at the end of their analysis, returned to the United States Supreme Court precedent, finding that there was no adverse impact in this case, even assuming that the conflict had been shown. That's the ultimate issue for this court. I think that Your Honor shared concerns, perhaps, that the district court had when this case first came to the United States district court. And in doing so, ordered an evidence of your hearing to help the magistrate make that decision. I would point out that far from discrediting or undermining that state court decision, the additional facts induced at the evidence of your hearing bolstered the reasonableness of that state court decision. The magistrate had the unique benefit of taking live testimony from Petitioner, from his trial attorney, Mr. Fletcher, and from the advisory council who had been appointed specifically to advise Petitioner about the conflict of interest. The reason I wanted you to pinpoint the specific question before us is because in rebuttal, we're going to hear from your opponent who might have a view that differs from yours. But we are looking at, in my view, and I don't know, we haven't decided the case, but in my view, we have a narrow question that we have to answer. Is that so? It is so. And I think it is as I understand it. And in order to prevail, the other side must show that there is an unreasonable use of Supreme Court authority. That is correct. And if they don't show that, the case is at an end, isn't it? That is correct. And going to that, didn't the state court at some level suggest that the Petitioner had to show that what wasn't done would have exonerated him? They did two things. First, they stated the standard here, which I think we're in agreement is the correct standard. And then they went on to their analysis, and they did use the term exonerated. But they also made a whole litany of findings that, in their opinion, showed that this dual representation had no impact on Petitioner's trial, that these are not things that but for that separate representation of Cortez in a separate trial impacted Petitioner's case negatively. And, yes, they used the term exonerated, but they also discussed other failings. I think they, given the record before them, the court of appeal was looking for how could this have affected this case, and saying that under these facts, under these circumstances, and under this trial record, none of these things negatively impacted Petitioner's trial but for this representation. And, therefore, even assuming that the conflict of interest was established, there can't be any relief because there's no adverse impact here. And unless there are further questions, I just want to point out that, again, we have multiple factual findings that are fatal to Petitioner's claims and which simply may not be relitigated here before the court of appeal because those findings speak to the reasonableness of the state court decision. And clearly no U.S. Supreme Court decision compelled the California Court of Appeal to rule otherwise in this case. And I respectfully submit that habeas relief is denied, excuse me, is barred under 2254D. Thank you, counsel. Thank you, Your Honor. Mr. Brennan, we look forward to your stimulating rebuttal. Brief rebuttal. Your Honor, two things. The state court decision is at the supplemental excerpt record, and the analysis that we have been discussing consists of one and one-half pages. And there is no discussion of the facts relative to this issue of adverse impact, adverse effect. And the court says, defendant does not argue that Attorney Fletcher failed to introduce critical evidence or subpoena specific witnesses whose testimony would have exonerated him of criminal wrongdoing. There is no reasoned decision by the court. And this is the direct appeal issue, not – and there is no reasoned opinion with respect to the habeas petition at all. There's none. It's a summary denial. Now, with respect to counsel's argument about factual findings by the district court, those, again, are limited and don't extend to the analysis. The factual findings are three pages, a total of some 12 paragraphs that appear on excerpts of record 298 through 302. I don't disagree with those factual findings. But the court's analysis of those findings thereafter are certainly what is before the court on appeal, and that was the subject of the certificate of appealability that was issued by the court. Thank you. And we wish you a successful trip back to Salem by the sea. Thank you. Thank you both. That – the case we have just heard is submitted. And the next case we will hear is United States v. Galvan Lizarraga. And I believe we're going to hear first from Chris Krause from the Federal Public Defender's Office in San Diego.
judges: Farris, Smith, Holland